**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND**

**CRIMINAL ACTION NO. 14-20-DLB-EBA**

UNITED STATES OF AMERICA                                                                                    PLAINTIFF

v.                              **MEMORANDUM OPINION AND ORDER**

**JOHN W. MADDUX, JR. and CHRISTINA CARMAN**                             DEFENDANTS

\*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\*

This matter is before the Court upon the United States' Renewed Motions for Forfeiture Money Judgment [Doc. # 778 and 779]. Defendants have responded to the motions. For the reasons set forth herein, the Court finds that a forfeiture money judgment, in the amounts sought by the United States, is appropriate.

**I.**

John W. Maddux. Jr., along with his wife, Christina Carman, and others, concocted and perpetuated a scheme to purchase untaxed cigarettes from domestic and international suppliers and resell the cigarettes, without tax, to customers within the Unites States, via phone and/or mail order. *See generally,* Indictment, Doc. # 1.

Maddux, Carman and nine others were indicted for various offenses relating to their criminal enterprise. Maddux ultimately plead guilty to multiple conspiracies to commit wire and mail fraud in violation of 18 U.S.C. § 1349, multiple conspiracies to commit money laundering in violation of 18 U.S.C. § 1956, violations of the Prevent All Cigarette Trafficking ("PACT") ACT , 18 U.S.C. § 371 and making false statements in

violation of 18 U.S.C. § 1001.  Carman was convicted by a jury of one count of conspiracy to commit wire and mail fraud in violation of 18 U.S.C. § 1349.

The United States seeks a forfeiture money judgment against both Defendants - $45,000,000.00 from Maddux, $17,467.257.06 from Carman – the sums representing the gross proceeds of the offenses for which Maddux plead guilty and for which Carman was convicted.  Defendants oppose the motions, asserting that a forfeiture money judgment, at this time, runs afoul the procedure set forth in Fed.R.Crim.Proc. 32.2 and is, thus, tantamount to an additional punishment after the fact.  In the alternative, Defendants argue that the amount sought is excessive. They contend that it is the **net** proceeds of their offenses, rather than the **gross** proceeds, that are subject to forfeiture. Finally, Defendants maintain that the amounts sought constitute an excessive fine in violation of the United States Constitution.

II.

The Court will not recount the full procedural history of this criminal action; it is set forth fully in the record.  The events relevant to the United States' motion begin with the Indictment, which contained an allegation of forfeiture.  Included in the allegation, the United States stated it was entitled to a money judgment "[a]n amount representing the approximate gross proceeds, up to at least $45,000,000.00, derived from the conspiracies, schemes to defraud and money laundering[.]" [Doc. # 1 at ¶70.]

The matter was set for a jury trial to begin on September 8, 2015. [Doc. # 55]. The trial was continued, upon joint motion of the parties, to January 11, 2016.  [Doc. # 91].  It is here that Maddux and Carman's procedural paths diverge.

**A.**

Maddux was severed from the trial [Doc. # 305] and, four months later, entered a plea of guilty to several counts of the Indictment, as set forth *supra*, and was sentenced to serve 120 months imprisonment, followed by three years of supervised release. [Doc. # 356]. Prior to sentencing, the United Sates filed a motion for forfeiture money judgment. [Doc. # 476].

During the sentencing hearing for Maddux and Carman, the undersigned stated that the Court would amend the Judgment upon resolution of the issue of a money judgment. [Transcript of August 30, 2016 Sentencing Hearing, Doc. # 623 at pp.11-12]. Before a ruling as to the money judgment was entered, Maddux appealed his sentence. [Doc. # 542]. By Order entered on February 26, 2019, the United States Court of Appeals for the Sixth Circuit affirmed Maddux's sentence. [Doc. # 741]. Thereafter, the United States filed the instant motion, renewing its motion for forfeiture money judgment.

**B.**

On January 27, 2016, a jury returned a verdict of guilty against Carman on Counts 1 and 2 of the Indictment. [Doc. # 345]. The next day, during a hearing pertaining to forfeiture, the parties agreed to submit the issue of a money judgment to the Court, rather than the jury. [Doc. # 349]. The undersigned directed the parties to file briefs on the issue of money forfeiture. *Id.* Briefs were timely filed. Meanwhile, upon Carman's Motion for Acquittal, she was acquitted of Count 2. [Doc. # 427].

On August 30, 2016, Carman was sentenced to 60 months imprisonment, followed by three years of supervised release. During the sentencing hearing, as set forth *supra*, the undersigned stated that the Court would amend the Judgment upon resolution of the

3

issue of a money judgment. [Transcript of August 30, 2016 Sentencing Hearing, Doc. # 623 at pp.11-12].  Carman filed a Notice of Appeal on September 6, 2016. [Doc. # 543].

While the appeal was pending, the Court entered an opinion sustaining in part and overruling in part the United States' motion for money forfeiture, ordering a judgment against Carman in the amount of $17,467,257.06. [Doc. # 664].  Carman filed a second Notice of Appeal, pertaining to the money judgment.

On February 26, 2019, the Sixth Circuit affirmed Carman's sentence. [Doc. # 741]. However, it vacated the forfeiture money judgment against Carman.  In doing so, the Court did not discuss the merits of the money judgment, but, rather, stated that Carman's appeal of her sentence divested this Court of jurisdiction to enter a money judgment.  The case was remanded to this Court for further proceedings.  Thereafter, the United States filed the instant motion, renewing its motion for forfeiture money judgment.

### III.

### A.

Defendants contend that any forfeiture money judgment is improper because the United States failed to follow the directives of Rule 32.2 in seeking the same.  Specifically, Maddux and Carman maintain that the government's failure to comply with the rules governing the entry of a forfeiture order at the time of sentencing precludes the entry of such an order now, some four years later.

Rule 32.2 establishes a detailed timeline for the imposition of a sentence of criminal forfeiture. Once the government provides notice in the indictment of its intent to seek forfeiture pursuant to Rule 32.2(a), the Court must determine what property is forfeitable "[a]s soon as practical after a verdict," *id.* 32.2(b)(1)(A), and "promptly" enter a

4

preliminary order of forfeiture for that property, *id.* 32.2(b)(2)(A). Specifically, "[u]nless doing so is impractical, the court must enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant [at sentencing] under Rule 32.2(b)(4)." *Id.* 32.2(b)(2)(B). At sentencing, "[t]he court must include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows of the forfeiture," and "must also include the forfeiture order, directly or by reference, in the judgment." *Id.* 32.2(b)(4)(B).

Here, the forfeiture allegation in the Indictment provided the initial notice of forfeiture. However, no preliminary order of forfeiture was entered in advance of sentencing; nor was a final forfeiture money judgment entered after sentencing. The issue of a forfeiture money judgment remained an apparition in the labyrinthine procedural history of this case.

Yet, that a preliminary order of forfeiture was not entered before sentencing does not "deprive the district court of authority to enter a final order of forfeiture." *United States v. Schwartz*, 503 F. App'x 443, 447 (6th Cir. 2012). The deadlines in Rule 32.2 are "time-related directives," which are " 'legally enforceable but do [] not deprive a judge or other public official of the power to take the action to which the deadline applies if the deadline is missed.' " *United States v. Martin*, 662 F.3d 301, 308 (4th Cir. 2011) (*quoting Dolan v. United States*, 560 U.S. 605 (2010)); *see also Schwartz*, 503 F. App'x at 447; *United States v. Farias*, 836 F.3d 1315 (11th Cir. 2016); *United States v. Davies*, 601 F. App'x 97, 100 (3d Cir. 2015); *United States v. Williams*, 720 F.3d 674, 702 (8th Cir. 2013); *United States v. McIntosh*, 2017 WL 3396429, at *9 (S.D.N.Y. Aug. 8, 2017) ( noting that

5

"every circuit to address the forfeiture issue head-on since *Dolan* has concluded that the deadlines in Rule 32.2 fall in the forgiving category of 'time-related directives.' ").

Therefore, it is not enough merely to show that the Rule 32.2 directives were not followed; Carman and Maddux must also "establish that [they] [were] denied adequate procedural due process"--that is, "notice and opportunity to be heard." *Schwartz*, 503 F. App'x at 448.

Here, the fact that the United States intended to seek a forfeiture money judgment was clear to Carman and Maddux from the beginning and throughout the course of the case against them. An allegation of forfeiture was in their Indictments. At the conclusion of Carman's jury trial, counsel and the Court specifically discussed the forfeiture money judgment. It was decided the issue would be submitted to the Court, not the jury. To that end, the Court established a briefing schedule. Both Defendants fully briefed the issue, although neither sought a hearing. Indeed, in their submissions to the Court, Defendants argued the amount of a forfeiture money judgment, rather than the imposition of the same.

At sentencing, the matter was discussed, again, as the Court told counsel that it intended to rule upon the money judgment after sentencing.

Finally, the United States Court of Appeals specifically discussed the forfeiture money judgment in affirming Carma's sentence. It noted that the order entered by the undersigned was improper because this Court had no jurisdiction to do so while Carman's appeal was pending. In "remanding the case for further proceedings," it would be appear the Sixth Circuit contemplated resolution of the issue of a forfeiture money judgment.

Maddux and Carman's claim that a forfeiture money judgment is an "additional" and heretofore unknown punishment stretches the bounds of credibility in the face of a

6

record replete with discussions, briefs and the like on the issue of a forfeiture money judgment. Contrary to Defendants' assertion, this is not a "do-over" for the United States. While the niceties of Rule 32.2 were not observed, both Defendants had ample notice of the United States' intention to seek a forfeiture money judgment and were not deprived of the opportunity to be heard in that regard.

**B.**

The amount sought by the United States is appropriate. The United States seeks a forfeiture money judgment of $45,000,000.00 from Maddux and $17,467,257.06 from Carman. These figures represent the gross proceeds of their criminal activity. In support of their calculation, the United States cites 18 U.S.C. § 981(a)(2)(A):

In cases involving **illegal goods**, illegal services, unlawful activities, and telemarketing and health care fraud schemes, the term "proceeds" means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is **not limited to the net gain or profit realized from the offense**.

*Id* .(emphasis added).

Defendants assert that it is the **profits** realized from the cigarette scheme that represent forfeitable sums. In doing so, they rely upon 18 U.S.C. § 981(a)(2)(B), which provides:

In cases involving **lawful goods** or lawful services that are sold or provided in an illegal manner, the term "proceeds" means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services. The claimant shall have the burden of proof with respect to the issue of direct costs. The direct costs shall not include any part of the overhead expenses of the entity providing the goods or services, or any part of the income taxes paid by the entity.

*Id.* (emphasis added).

Whether the "gross" proceeds or the "net" proceeds are subject to forfeiture turns upon whether the contraband cigarettes which form the basis of Defendants' offenses are considered "illegal goods" or "lawful goods sold in an illegal manner."

The Court addressed this issue in its previous order on forfeiture and found that the cigarettes were possessed by the Defendants without payment of taxes and are, thus, illegal *per se*. *United States v. Maddux, et al*, 229 F.Supp.3d 591 (E.D. Ky. 2017) *vacated and remanded United States v. Carman*, 933 F.3d 614 (6th Cir. 2019). This Court relied upon the Fourth Circuit's opinion in *United States v. Hasan*, 718 F.3d 338 (4th Cir. 2013), a factually similar case in which the court which analyzed the applications of the competing statutes in painstaking detail. The *Hasan* Court noted that other courts had reached the same conclusion. For example, the Eleventh Circuit found that where the defendant was charged with a violation of the CCTA, a forfeiture based on the wholesale value of cigarettes was accurate. *United States v. Noorani*, 188 Fed. App'x. 833 (11th Cir. 2006); *see also United States v.Funds from First Reg'l Bank Acct. No. XXXXX1859*, 639 F.Supp.2d 1203 (W.D. Wash. 2009); *United States v. Patel*, 949 F.Supp.2d 642 (W.D. Va. Jan. 11, 2013); *United States v. Diallo*, No. 09-CR-858, 2011 WL 135005 (S.D.N.Y. Jan. 13, 2011). In *First Regional Bank*, the district court reasoned that the case involved "illegal goods" because unregistered cigarettes were unlawful under state law. 639 F.Supp.2d at 1216. Similarly, in *Patel*, the court found that because the possession and trafficking of contraband cigarettes is inherently illegal, the cigarettes involved are "illegal goods." 949 F.Supp.2d at 653. More recently, in *United States v. Tran*, the district court for the Western District of Virginia concurred with *Hasan*, holding "because the

contraband cigarettes are 'illegal goods', the Government is entitled to the gross proceeds of the offense." 2013 WL 113220233 at *3.

Defendants have submitted nothing to the Court which renders this legal analysis void. Indeed, their arguments in this regard are identical to those presented in the first instance. Defendants were dealing in unstamped, or untaxed, cigarettes. It is inherently unlawful under state and federal laws to possess cigarettes bearing no evidence of the payment of applicable taxes. Therefore, the cigarettes involved in this case are "illegal goods," and the **gross** proceeds therefrom are subject to forfeiture.

### C.

Finally, Defendants argue the amount sought by the United States is tantamount to an excessive fine, in violation of the United States Constitution.

"A forfeiture order is considered unconstitutional 'if it is grossly disproportional to the gravity of a defendant's offense.'" *United States v. Bajakajiam*, 524 U.S. 321, 334 (1998). The oft-cited facts of *Bajakajiam* bear repeating: Bajakajiam, his wife, and his two daughters were waiting at Los Angeles International Airport to board a flight to Italy; their final destination was Cyprus. Using dogs trained to detect currency by its smell, customs inspectors discovered $230,000 in cash in the Bajakajiam' checked baggage. *Id.* at 325. A customs inspector approached respondent and his wife and told them that they were required to report all money in excess of $10,000 in their possession or in their baggage. *Id.* Bajakajiam said that he had $8,000 and that his wife had another $7,000, but that the family had no additional currency to declare. *Id.* A search of their carry-on bags, purse, and wallet, however, revealed more cash; in all, customs inspectors found $357,144. *Id.* The currency was seized, and Bajakajiam was taken into custody. *Id.*

A federal grand jury indicted Bajakajiam on three counts. *Id.* at 325. Count One charged him with failing to report, as required by 31 U.S.C. § 5316(a)(1)(A), that he was transporting more than $10,000 outside the United States, and with doing so "willfully," in violation of § 5322(a). Count Two charged him with making a false material statement to the United States Customs Service, in violation of 18 U.S.C. § 1001. Count Three sought forfeiture of the $357,144 pursuant to 18 U.S.C. § 982(a)(1). *Id.* at 326. He plead guilty to the failure to report in Count One; the Government agreed to dismiss the false statement charge in Count Two; and a bench trial was held on the forfeiture in Count Three. After the bench trial, the district court found that the entire $357,144 was subject to forfeiture because it was "involved in" the offense. *Id.*

The question before the Supreme Court in *Bajakajiam* was whether the full forfeiture under section 982(a)(1) of the amount of money the defendant was carrying was constitutional under the Excessive Fines Clause of the Eight Amendment. *Id.* at 337. The Court found that the forfeiture was punishment, subject to the Excessive Fines Clause, because it was "imposed at the culmination of a criminal proceeding and require[d] conviction of an underlying felony," and that it was not based on the judiciary's in rem jurisdiction over the currency itself, but rather as a result of the defendant's criminal conviction. *Id.*

The Court explained that to qualify as an excessive fine under the Clause, the amount of the forfeiture had to be "grossly disproportionate" to the gravity of the criminal offense. *Id.* The Court stated that the defendant was merely guilty of a reporting offense, as it was permissible to transfer the money so long as it was reported and there was no connection to other illegal activities. It also looked to the Federal Sentencing Guidelines

for guidance in determining the culpability associated with a violation of the reporting statute, and found it relevant that the maximum authorized fine was $5000, with a maximum sentence of six months. *Id.* These considerations "confirm [ed] a minimal level of culpability." *Id*. at 337–38. Similarly, the defendant did not cause significant harm, as there was no fraud committed on the United States, and no loss caused to the public fiscally. *Id*. at 339. For these reasons, the Court agreed with the lower courts that full forfeiture would have been grossly disproportionate to the gravity of the offense. *Id*. at 339–340.

Maddux and Carman are a different story. Their offenses were not simple, "reporting offenses" with "minimal culpability." Theirs was a complex, far reaching, prolonged scheme, in which they were not low-level players, but king and queen. They defrauded federal, state and local governments. The maximum fine for their crimes range from $250,000 to $500,000 per offense. 18 U.S.C. § 3571(b) and (d). Indeed, "[i]f any person derives pecuniary gain from the offense, or if the offense results in pecuniary loss to a person other than the defendant, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss." 18 U.S.C. § 3571(d); *see United States v. Gibson*, 409 F.3d 325, 342 (6th Cir. 2005). As set forth by the United States in their reply brief in support of their motion, following the statutory calculation, the maximum fine for Carman's offense could be as much as $70 million which is twice the gross proceeds or $46 million which is twice the loss this Court attributed to Carman at sentencing. The statutory maximum fine for Maddux's offenses could have been as much $90 million which is twice the gross proceeds or $96 million which is twice the loss this Court attributed to Maddux at sentencing. These amounts are much greater than what

11

the United States seeks. Moreover, this Court already reduced by half the gross proceeds of the fraudulent scheme in determining the amount for forfeiture of Carman's criminal proceeds, and the United States has limited its renewed motion for money judgment against Carman to that amount.

Finally, as the United States points out, other courts have held that forfeiture of criminal proceeds can **never** be disproportionate and excessive under the Eighth Amendment. *See United States v. Sanjar*, 853 F.3d 190, 214 (5th Cir. 2017) ("Forfeiture orders tied to the proceeds of a crime generally are not considered a fine subject to the Eighth Amendment."), *cert. denied*, 138 S. Ct. 250, 138 S. Ct. 273 (2017), *superseded on other grounds*, 876 F.3d 725 (5th Cir. 2017); *United States v. Funds on Dep. at Bank One Chicago Acct. x8312*, 393 F. App'x 391, 392 (7th Cir. 2010) ("[F]orfeiting the proceeds of crime never violates the Eighth Amendment."). At best, it is unclear whether the proceeds of a criminal enterprise can be disproportionate to the offense. *See United States v. Jamal*, 599 F.3d 347, 354-355 (4th Cir. 2010)(Even if forfeiture of criminal proceeds may be excessive under the Eighth Amendment, forfeiture of the proceeds of a crime will not be grossly disproportional to the offense "in most cases.").

Given the nature and breadth of their offenses, the Court finds that forfeiture money judgment sought by the United States is not excessive.

**IV.**

For the reasons set forth in this Opinion, **IT IS HEREBY ORDERED** that United States' Renewed Motions for Forfeiture Money Judgment [Doc. # 778 and 779] be **SUSTAINED**.

This 3rd day of August, 2020.



Signed By:
*David L. Bunning*  DB
United States District Judge